IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA FALA,

      Plaintiff,                         No. CIV S-05-0484 LKK KJM

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.                FINDINGS & RECOMMENDATIONS

/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court recommends plaintiff's motion for remand be granted and the Commissioner's cross-motion for summary judgment be denied.

I. Factual and Procedural Background

        In a decision dated September 25, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability

1

1  Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of
2  bipolar disorder and depression but these impairments do not meet or medically equal a listed
3  impairment; plaintiff and her husband are not totally credible; plaintiff has the residual functional
4  capacity to perform light work with certain postural and mental limitations; plaintiff cannot
5  perform her past relevant work; based on the testimony of a vocational expert, significant
6  numbers of jobs exist in the national economy that plaintiff can perform; and plaintiff is not
7  disabled.  Administrative Transcript ("AT") 24, 28-29.  Plaintiff contends that the ALJ
8  improperly relied on the testimony of the vocational expert and did not accord proper weight to
9  the opinion of a treating psychiatrist.
10  /////
11  /////

---

is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

## II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. Analysis

### A. Vocational Expert Testimony

Plaintiff contends the ALJ committed error in relying on a hypothetical that did not contain all the limitations assessed by the ALJ in the residual functional capacity finding. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes v. Bowen, 881 F.2d 747, 756

(9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

        In this case, only one hypothetical was posed to the vocational expert. Included in that hypothetical was a limitation to work involving repetitive tasks due to a bipolar disorder. AT 300. This limitation is not spelled out in the findings of the ALJ. AT 28. The residual functional capacity finding, however, does set forth a limitation to work involving no repetitive motions, a limitation not included in the hypothetical. Cf. AT 28 (Finding no. 7) with AT 300. This finding is repeated in the body of the ALJ's decision. AT 26. Defendant argues this conflict in the record is a typographical error. While defendant's argument has a certain appeal from a textual analysis standpoint, the record as it now stands does not clearly support defendant's position. Although no physical limitations were assessed by any treating physicians or state agency physicians, the ALJ did limit plaintiff to light work with certain postural limitations. AT 28; cf. AT 138-141, 146-191, 205-224. The apparent basis[2] of the physical residual functional capacity finding is plaintiff's testimony. AT 287-291. However, the ALJ also found plaintiff was not totally credible without separately addressing in the credibility analysis plaintiff's allegations regarding her mental and physical impairments. AT 26. The record is additionally unclear regarding the basis of the ALJ's physical residual functional capacity finding, because plaintiff expressly disclaimed any physical limitations if she took over-the-counter pain relief medication and thereby declined to undergo a consultative orthopedic

---

[2] The ALJ does not specifically set forth what evidence he relied on in formulating the physical residual functional capacity finding.

4

evaluation. AT 61 (disability claimed only due to "chemical imbalance"), 144; cf. AT 287 (plaintiff testified pain medication does not always work). On this record, it is possible the ALJ did indeed credit some of plaintiff's testimony regarding physical limitations, perhaps attributing some physical limitations due to side effects of plaintiff's psychotropic medications, and intended to include a limitation of no repetitive motions. See, e.g., AT 285, 291 (plaintiff testified to total body exhaustion as side effects of medication).[3] Because the record is not clear on this issue, the matter should be remanded so that the ALJ may make further findings regarding plaintiff's residual functional capacity and so that complete hypotheticals based on those findings may be posed to the vocational expert.[4]

B. Treating Physician's Opinion

Plaintiff also contends the ALJ did not accord proper weight to the opinion of treating psychiatrist, Dr. Cheang. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

---

[3] On remand, the ALJ should specifically address the side effects of plaintiff's medications and fatigue on her ability to perform work related activities.

[4] Plaintiff also challenges the vocational expert's testimony as conflicting with the Dictionary of Occupational Titles. The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements. The DOT is a primary source of reliable job information for the Commissioner. 20 C.F.R. § 404.1566(d)(1). See Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (the DOT acts as a rebuttable presumption, which can be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy). On remand, plaintiff will have the opportunity to cross-examine the vocational expert regarding any conflict between jobs identified by the expert and the classification of the identified jobs in the DOT.

1         To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

        Dr. Cheang completed a mental functional evaluation in December 2002. AT 195-198. The ALJ accorded controlling weight to the opinions rendered in that evaluation. AT 24. Dr. Cheang evaluated plaintiff's ability to complete a normal workday without interruptions and ability to respond appropriately to changes in a work setting as "fair," which was defined on the form as indicating an impaired ability but with the degree/extent of the impairment requiring further description. AT 197. No further description was provided by Dr. Cheang nor was any clarification provided by the ALJ as to how Dr. Cheang's assessment of "fair" was construed by the ALJ in assessing plaintiff's mental residual functional capacity. The ALJ also accorded substantial weight to the opinion of state agency psychological consultants who opined plaintiff could maintain sufficient concentration, persistence and pace to perform simple repetitive activities over a normal work week. AT 25, 139 (plaintiff between not

significantly limited and moderately limited in ability to complete normal work week), 206-207 (plaintiff could perform simple repetitive tasks). These opinions, which are apparently contradictory to those of Dr. Cheang, were not resolved by the ALJ. Dr. Cheang's limitations, which were purportedly given controlling weight, were not included in the hypothetical posed to the vocational expert. AT 300. On remand, the ALJ should resolve this conflict; if Dr. Cheang's opinion is in fact given controlling weight, all limitations assessed by Dr. Cheang should be included in the hypothetical posed to the vocational expert.

Dr. Cheang also opined in an undated letter[5] that plaintiff was unable to handle stress "at this time." AT 237. The ALJ did not accord controlling weight to Dr. Cheang's opinion regarding stress because the opinion did not address the nature and severity of plaintiff's mental impairment, was ambiguous regarding the degree and type of stress, and was inconsistent with Dr. Cheang's more detailed December 2002 mental functional evaluation. AT 24-25. These reasons are sufficient for rejecting Dr. Cheang's conclusory opinion regarding stress.

For the foregoing reasons, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for remand be granted;

2. The Commissioner's cross-motion for summary judgment be denied; and

3. This matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten

---

[5] Although the letter itself is undated, an incomplete "received" stamp indicates a date of July 16, 2002. The letter itself, however, states that plaintiff has been a patient since the later date of July 18, 2002. The ALJ indicates the date of submission for the record as July 2003.

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006
fala.ss